**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| ANDREW DUQUM, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>SCOTTRADE, INC., a Missouri Corporation,<br><br>       Defendant. | Case No. `4:15-cv-1537`<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Joseph J. Siprut
*jsiprut@siprut.com*
John S. Marrese
*jmarrese@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342
**www.siprut.com**

Anthony G. Simon
*asimon@simonlawpc.com*
John G. Simon
*jsimon@simonlawpc.com*
**THE SIMON LAW FIRM, P.C.**
800 Market Street
Suite 1700
St. Louis, Missouri 63101
Phone: 314.241.2929
Fax: 314.241.2029

*Attorneys for Plaintiff
and the Proposed Putative Classes*

Plaintiff Andrew Duqum ( "Plaintiff") brings this Class Action Complaint against Defendant Scottrade, Inc. ("Defendant" or "Scottrade"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I.        NATURE OF THE ACTION

1.        This matter stems from the havoc wreaked by Scottrade's grossly deficient data security system. As a result of these deficiencies, the sensitive personal and financial information of millions of customers was hacked over the course of several months in late 2013 to early 2014 (the "Security Breach").

2.        Scottrade's security failures, and its failure to abide by best practices and industry standards with respect to data security and retention, caused the Security Breach and compromised the sensitive personal and financial information of millions of consumers.

3.        Scottrade has estimated that *4.6 million* customers have been affected by the Security Breach, though the number could be larger.

4.        Despite that the Security Breach occurred over a year ago, Scottrade has only just recently begun notifying customers. The belated notice is deficient, failing to fully explain the nature and cause of the massive data breach.

5.        Accordingly, Plaintiff, on behalf of himself and other members of the Class, asserts claims, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## II.    <u>JURISDICTION AND VENUE</u>

6.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). In the aggregate, Plaintiff's claims and the claims of other members of the Class exceed $5,000,000 exclusive of interests and costs, and there are numerous class members who are citizens of States other than Defendant's state of citizenship.

7.    This Court has personal jurisdiction over Defendant because Defendant is a (a) citizen of this district; (b) has directed tortious acts toward individuals residing within this District, and (c) has committed tortious acts that it knows or should have known would cause injury to Plaintiff and Class Members in this District.

8.    Venue is proper within this District under 28 U.S.C. §1391(b)-(c) because Defendant resides in this District, regularly conducts business in this District, committed unlawful acts or omissions in this District, and is subject to personal jurisdiction in this District.

## III.    <u>PARTIES</u>

*Plaintiffs*

9.    Plaintiff Andrew Duqum is a citizen of the State of Missouri and is domiciled in St. Louis County, Missouri. Mr. Duqum opened an account with Scottrade in late 2013 with a heightened expectation of privacy due to the nature of Defendant's services. As part of the process of creating his account, Mr. Duqum provided his sensitive personal information to Scottrade. In signing up with Scottrade and subsequently paying to use it, Mr. Duqum contracted with Scottrade for the adequate protection of his sensitive personal and financial information. As a result of Scottrade's inadequate security, Mr. Duqum's personal information was exposed.

***Scottrade***

10.    Defendant Scottrade, Inc. is a Missouri corporation organized and existing under the laws of Missouri, with its principal place of business in Town and Country, Missouri. Scottrade is a privately owned discount retail brokerage firm, providing services both online and through its 503 branch offices to millions of customers throughout the United States. Those services include brokerage services, banking services, investment education, and online trading platforms.

## IV.    FACTUAL BACKGROUND

***Scottrade's Privacy Representations***

11.    Scottrade operates an online trading website used by millions of investors across the country to perform and track their investment account activity.

12.    In order to create a Scottrade investment account, customers must provide certain sensitive personal identification information to Scottrade. Such personal information may include names, addresses, phone numbers, social security numbers, employment information and other personal information.

13.    Scottrade makes representations regarding the privacy and safeguarding of customers' personal information in the "Scottrade Privacy Statement."[1]

14.    The Scottrade Privacy Statement explains when Scottrade collects customers' personal information, including when customers:

- Open an account or provide account information
- Give us your contact information or make a wire transfer
- Make deposits or withdrawals from your account

   We also collect your personal information from others, such as credit bureaus, affiliates and other companies.[2]

---

[1]   https://www.scottrade.com/documents/alt/PrivacyStatement.pdf (last visited Oct. 6, 2015).

[2]   *Id.*

15.     The Scottrade Privacy Statement also informs customers of the kinds of sensitive personal information Scottrade collects and shares, including:

- Social Security numbers and Employment information
- Account balances and transaction history
- Credit history and Investment experience[3]

16.     Scottrade makes several representations to customers throughout the process of opening an account regarding its commitment to safeguarding the personal information customers must provide to open an account.

17.     The Scottrade Privacy Statement expressly represents to customers that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured filed and buildings."[4]

18.     Scottrade makes further representations to customers regarding its concern for the protection of their personal information and the steps Scottrade takes to safeguard that information. For example, in a document entitled "Secure Online Investing & Identity Theft Protection," Scottrade states the following:

> **Take Control of Your Safety**
>
> At Scottrade, we take security seriously and use a variety of measures to protect your personal information and accounts. We keep all customer information confidential and maintain strict physical, electronic and procedural safeguards to protect against unauthorized access to your information.
>
> Scottrade is committed to constantly updating its practices to stay ahead of identity thieves. Using **VeriSign Identity Protection Fraud Detection Service**, for example, Scottrade automatically checks your account for signs of activity from a foreign computer.[5]

---

[3] *Id.*
[4] *Id.*
[5] https://www.scottrade.com/online-brokerage/secure-trading.html (last visited Oct. 6, 2015).

19.     Scottrade acknowledges the importance of such safeguarding, noting that "[a]ccount numbers, Social Security numbers and other pieces of personal information can all be used to commit fraud."[6]

20.     Plaintiff and Class members bargained for the safeguarding and privacy of their sensitive personal and financial information in opening an account with Scottrade. They further relied on Scottrade's material misrepresentations regarding its enhanced data security measures in opening their accounts.

***Importance of Data Security to Plaintiff***

21.     Consumers like Plaintiff place high value on data privacy and security, and they consider it when making purchasing decisions. Plaintiff would not have opened an account at Scottrade, or would not have paid as much in relation to that account, had he known that Scottrade failed to take reasonable precautions to secure his personal and financial data. Scottrade failed to disclose its insufficient data security practices and Plaintiff and Class members relied on that omission to open accounts at Scottrade.

22.     Furthermore, given the sensitive nature of the personal and financial data required by Scottrade to operate its business as well as the numerous representations regarding data security made by Scottrade, Plaintiff and Class members entered into an implied and/or express contract with Scottrade for adequate data security. However, rather than use Plaintiff's and Class members' moneys to implement adequate data security policies and procedures, Scottrade simply kept the money to maximize its profits, thus breaching its implied and/or express contract.

---

[6] *Id.*

*The Data Breach*

23.     Beginning on or about October 1, 2015, Scottrade admitted that a massive data breach had affected the sensitive personal information of an estimated 4.6 million customers. Scottrade posted a "Cyber Security Update" on its website, stating that "Federal law enforcement officials recently informed us that they've been investigating cybersecurity crimes involving the theft of information from Scottrade and other financial service companies."[7] Scottrade stated that it "believe[s]" the breach occurred between late "2013 and early 2014."[8]

24.     Around that same time, Scottrade confirmed that the Federal Bureau of Investigation ("FBI") alerted it, as part of an ongoing investigation related to cybercrime aimed at financial institutions, that the accounts of several million Scottrade customers had been hacked sometime in late 2013 through early 2014. The hacked accounts contained customers' names and addresses along with Social Security numbers, tax identification numbers, employer contact information, and personal e-mail addresses, among other sensitive information.

25.     That Scottrade only learned of the data breach from the FBI "suggests that the company's security measures weren't thorough enough to even detect the hacking attempt, let alone stop it, and that millions of customers were unaware of the danger until the feds stepped in."[9]

26.     Scottrade's Cyber Security Update attempted to play down the sensitivity of the information accessed by hackers:

> We have no reason to believe that Scottrade's trading platforms or any client funds were compromised. Based upon our internal investigation and information provided by the federal authorities, we believe a list of client names and street addresses was taken from our system.

---

[7] https://about.scottrade.com/updates/cybersecurity.html (Oct. 6, 2015).
[8] *Id.*
[9] http://www.engadget.com/2015/10/03/scottrade-data-breach/ (last visited Oct. 6, 2015).

> Although Social Security numbers, email addresses or other
> sensitive data were contained in the system accessed, it appears that
> contact information was the focus of the incident.[10]

However, the Cyber Security Update promises only that Scottrade has "not seen any indication of

*increased* fraudulent activity as a result of this incident." (emphasis added)[11]

27.     On or about October 2, 2015, Scottrade began notifying some of the customers it

believed were affected by the Security Breach via e-mail, but acknowledged that some

communications were "still en route" to others.[12] Scottrade confirmed that the hackers had access

to customers' names, addresses, Social Security numbers, employer information, and tax

identification numbers.

28.     The notification admits that Scottrade is not aware exactly what personal

information was taken during the months-long Security Breach. However, despite the fact that

Social Security numbers along with other high-value personal information were equally available

to the hackers, Scottrade surmises that only customers' contact information "was the focus of the

incident."

29.     Scottrade's e-mail notification of the Security Breach shows that it has placed

serious burdens *on the customers* to remedy the damage wrought by Scottrade's deficient data

security. In particular, Scottrade advises:

> As always, we encourage you to regularly review your Scottrade and
> other financial accounts and report any suspicious or unrecognized
> activity immediately. As recommended by federal regulatory
> agencies, you should remember to be vigilant for the next 12 to 24
> months and report any suspected incidents of fraud to us or the
> relevant financial institution. Please also read the important
> information included on ways to protect yourself from identity theft.

---

[10] https://about.scottrade.com/updates/cybersecurity.html (last visited Oct. 6, 2015).
[11] *Id.*
[12] *Id.*

30.     Despite warning customers to be "vigilant" for up to 24 months, Scottrade offers only one year of free credit monitoring and identity theft insurance to affected customers. Moreover, Scottrade customers again have the burden to expend time and effort signing up online or by phone for credit monitoring and identity theft insurance. Scottrade reminds customers that "Additional steps may be required" in order to activate these measures.

31.     Scottrade suggests additional steps which also require time, effort, and potentially out-of-pocket expense for protection from the Security Breach, including calling credit reporting agencies to obtain credit reports and "contacting the fraud department of the three major credit bureaus to request that a 'fraud alert' be placed on your file."

32.     This massive Security Breach could have been prevented in the first place had Scottrade taken the necessary and reasonable precautions to protect their customers' personal and financial information. Scottrade was aware or should have been aware of the need to secure users' information, especially in light of the recent rise in massive security breaches on the Internet and the fact that the information contained on Scottrade's servers is particularly sensitive.

33.     Indeed, Scottrade has a history of weak network security and lax oversight of electronic wire transfers on its system. One article explained:

> [The Financial Industry Regulatory Authority] also found that Scottrade failed to establish a reasonable supervisory system to monitor for wires to third-party accounts. From October 2011 to October 2013, Scottrade failed to obtain any customer confirmations for third-party wire transfers of less than $200,000, and Scottrade failed to ensure that the appropriate personnel obtained confirmations for third-party wire transfers of between $200,000 and $500,000.
>
> During that period, the firm processed more than 17,000 third-party wire transfers totaling more than $880 million.
>
> "Firms must have robust supervisory systems to monitor and protect the movement of customer funds," Brad Bennett, executive vice

president and chief of enforcement, said in a statement. " . . . Scottrade had been alerted to significant gaps in [its] systems by FINRA staff, yet years went by before [it] implemented sufficient corrective measures."

[Scottrade was] cited for the weak supervisory systems by FINRA examination teams in 2011, but [did not take] necessary steps to correct the supervisory gaps.[13]

34.    In short, as a result of willfully ignoring and/or negligently failing to correct the deficiencies in its data security systems, Scottrade compromised private user information and personal financial information connected with millions of customers' accounts, including Plaintiff's and the Class members', for a period of several months in late 2013 through at least February 2014.

35.    Plaintiff and the Class members relied on Scottrade's repeated representations that it had sufficient security systems in place to protect their personal information in providing said personal information to Scottrade.

36.    Scottrade knew based on past breaches of its systems and the weaknesses in the protections it had in place that it could not protect Plaintiff's and the Class members' personal information as it represented. Scottrade made such misrepresentations both prior to and after entering into agreements with Plaintiff and the Class members.

37.    As a result of Scottrade's unfair, unreasonable, and inadequate data security, its customers' extremely personal information is now at risk.

38.    Scottrade's failure to comply with reasonable security standards provided short-term and fleeting benefits in the form of saving on the costs of compliance, but at the expense and to the severe detriment of its own customers – including Plaintiff and Class members here – who

---

[13]  http://www.thinkadvisor.com/2015/06/22/morgan-stanley-scottrade-fined-by-finra-for-failin (last visited Oct. 6, 2015).

have been subject to the Security Breach or otherwise have had their highly sensitive personal and financial information placed at serious and ongoing risk.

39.     Scottrade allowed widespread and systematic theft of their customers' information. Scottrade's actions did not come close to meeting the standards of commercially reasonable steps that should be taken to protect such intensely personal information.

***Damages Sustained by Plaintiffs and the Class***

40.     Plaintiff and Class Members are subject to continuing damage from having their personal information compromised as a result of Scottrade's inadequate systems and failures. Such damages include, among other things, some or all of the following: the amount paid to Scottrade to safeguard their personal information; time, effort, and out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Scottrade's security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; the cost of and time spent replacing credit cards and debit cards and reconfiguring automatic payment programs with other merchants related to the compromised cards; and/or financial losses for any unauthorized charges by identity thieves who wrongfully gained access to the personal information of Plaintiff and the Class members.

41.     To date, Scottrade has offered insufficient relief to Plaintiff and the Class members, including no compensation and insufficient credit monitoring and identity theft protection services.

## V.     CLASS ACTION ALLEGATIONS

42.     Plaintiff brings Counts I, II, and V as set forth below, on behalf of himself individually and as a class action, pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure on behalf of a class defined as:

> All citizens of the United States who were customers of Scottrade
> and had their information compromised in the Security Breach (the
> "National Class").

Excluded from the National Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

43.     Plaintiff brings Count III, as set forth below, on behalf of himself individually and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All citizens of the Consumer Fraud States[14] who were customers of
> Scottrade and had their information compromised in the Security
> Breach (the "Consumer Fraud Multistate Class").

Excluded from the Consumer Fraud Multistate Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

44.     In the alternative to Count III, Plaintiff brings Count IV, as set forth below, on behalf of himself individually and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following state sub-class, defined as:

> All citizens of the State of Missouri who were customers of
> Scottrade and had their information compromised in the Security
> Breach (the "Missouri State Class").

---

[14] The States that have similar consumer fraud laws based on the facts of this case are: California (Cal. Bus. & Prof. Code §17200, *et seq.* and Cal. Civil Code § 1750, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

Excluded from the Missouri State Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

45.     The National Class, Consumer Fraud Multistate Class, and Missouri State Class are collectively referred to as the "Class," unless specifically indicated otherwise.

46.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the millions. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

48.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

a.      Whether Defendant failed to use reasonable care and commercially reasonable methods to secure and safeguard their customers' sensitive personal and financial information;

b.      Whether Defendant properly implemented any security measures to protect customer personal and financial information from unauthorized capture, dissemination, and misuse;

c.      Whether Defendant's conduct violates the Missouri Merchandising Practices Act and other asserted Consumer Fraud Acts;

d.      Whether Defendant's conduct constitutes breach of an express contract;

e.      Whether Defendant's conduct constitutes breach of an implied contract; and

f.      Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief.

49.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

50.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above and were thus all subject to the Security Breach alleged herein. Further, there are no defenses available to Defendant that are unique to Plaintiff.

51.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

52.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Class would continue to suffer the harm

- 13 -

described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

53.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class as a whole.

54.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
**Breach of Express Contract**
**(On Behalf of Plaintiff and the National Class)**

55.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

56.     When Plaintiff and Class members provided their personal and financial information to Scottrade in order to receive the company's services, they entered into express contracts with Scottrade pursuant to which Scottrade agreed to safeguard and protect such information from being compromised.

57.     Scottrade solicited Plaintiff and Class members to sign up with Scottrade and to provide their personal and financial information. Plaintiff and Class members later paid fees to Scottrade based on Scottrade's express representations concerning the safeguarding and protection of personal information.

58.     Plaintiff and Class members fully performed their obligations under the contracts with Scottrade.

59.      Scottrade breached the contracts and did not safeguard or protect Plaintiff's and the proposed Class members' personal data from being accessed, compromised, and/or stolen. Scottrade did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiff's and the Class members' personal and financial information.

60.     Plaintiff and Class members had their personal and financial information compromised as a result of the Security Breach.

61.     Plaintiff and the Class members have suffered and will continue to suffer damages as the result of Scottrade's breach, including the monetary fees that Plaintiff and Class members paid to Scottrade.

62.     The losses and damages sustained by Plaintiff and Class members as described herein were the direct and proximate result of Scottrade's breaches of the contracts between it and Plaintiff and Class Members.

## COUNT II
### Breach of Implied Contract
### (In the alternative to Count I and on Behalf of the National Class)

63.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

64.     Plaintiff brings this Count in the alternative to Count I to the extent that an express contract is not found to exist between Scottrade and Plaintiff and the members of the Class.

65.     When Plaintiff and Class members provided their personal and financial information to Scottrade in order to receive its services, they entered into implied contracts with Scottrade pursuant to which Scottrade agreed to safeguard and protect such information from being compromised.

66.     Scottrade solicited Plaintiff and Class members to sign up with Scottrade and to provide their personal and financial information. Plaintiff and Class Members accepted Scottrade's offer and provided their personal and financial information their financial information. Plaintiff and Class members paid money to Scottrade in exchange for Scottrade's promise to protect their anonymity and confidentiality.

67.     Plaintiff and Class members would not have provided and entrusted their financial and personal information to Scottrade in the absence of the implied contracts.

68.     Plaintiff and Class members fully performed their obligations under the implied contracts with Scottrade.

69.      In the contracts, Scottrade promised to safeguard and protect Plaintiff's and Class members' private personal and financial information from being compromised and/or stolen.

- 16 -

70.     Scottrade breached the implied contracts and did not safeguard or protect Plaintiff's and the proposed Class members' personal data from being accessed, compromised, and/or stolen. Scottrade did not maintain sufficient security measures and procedures to prevent unauthorized access to Plaintiff's and the Class members' personal and financial information.

71.     Scottrade's failure to fulfill their implied contractual obligations resulted in Plaintiff and the Class members receiving services of far less value than what was promised, i.e., services that included adequate protection of confidential information. Accordingly, Plaintiff and the Class members did not receive the full benefit of their bargain.

72.     Plaintiff and the Class members have suffered and will continue to suffer damages as the result of Scottrade's breach, including the monetary difference between the amount paid for services as promised (which were promised to include adequate data protection) and the services actually provided by Scottrade (which did not include adequate data protection).

73.     The losses and damages sustained by Plaintiff and Class members as described herein were the direct and proximate result of Scottrade's breaches of the implied contracts between it and Plaintiff and Class Members.

### COUNT III
**Violation of the Missouri Merchandising Practices Act**
**(and Substantially Similar Laws of the Consumer Fraud States)**
**(on Behalf of the Consumer Fraud Multistate Class)**

74.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

75.     Plaintiff and the other members of the Class were deceived by Scottrade's failure to properly implement adequate, commercially reasonable security measures to protect their private personal and financial information in the face of Scottrade's repeated representations and assurances to the contrary.

- 17 -

76.     Scottrade intended for Plaintiff and the other members of the Class to rely on its representations and assurances that the information furnished to Scottrade would be protected, secure, and not susceptible to access from unauthorized third parties when Scottrade knew otherwise.

77.     Scottrade mishandled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

78.     Scottrade failed to follow industry best practices concerning data theft or were negligent in preventing such data theft from occurring.

79.     Scottrade accordingly engaged in an unlawful unfair and deceptive practice under Mo. Stat. Ann. § 407.020.

80.     It was foreseeable that Scottrade's willful indifference or negligent course of conduct in handling their customers' personal information would put that information at risk of compromise by data thieves.

81.     Scottrade benefited from mishandling customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Scottrade saved on the cost of those security measures.

82.     Scottrade's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Scottrade's deception that their personal and financial information was secure and protected.

83.     Scottrade violated Mo. Ann. Stat. § 407.020 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the other Class members' private personal and financial information, by misrepresenting the security of Plaintiff's and Class members personal information, by failing to warn them that their information was at risk

before and/or after Plaintiff and Class members opened accounts with Scottrade, and by failing to discover and immediately notify affected customers of the nature and extent of the Security Breach.

84.     Scottrade's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

85.      Scottrade's conduct constitutes unfair acts or practices as defined in that statute because Scottrade caused substantial injury to Plaintiff and Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

86.     Plaintiff and the other members have suffered injury in fact and actual damages including lost money and property as a result of Scottrade's violations.

87.     Plaintiff's and the other Class members' injuries were proximately caused by Scottrade's fraudulent and deceptive behavior, which was conducted with wanton, willful, and/or outrageous acts and/or reckless disregard for the rights of others, such that an award of punitive damages is appropriate under Mo. Stat. Ann. § 407.025.1.

88.     By this conduct, Scottrade violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the Consumer Fraud States, whose laws do not materially differ from that of Missouri, or conflict with each other for purposes of this action.

## COUNT IV
### Violation of the Missouri Merchandising Practices Act
### (In the alternative to Count III and Behalf of the Missouri State Class)

89.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

90.     Plaintiff and the other members of the Class were deceived by Scottrade's failure to properly implement adequate, commercially reasonable security measures to protect their

private personal and financial information in the face of Scottrade's repeated representations and assurances to the contrary.

91.     Scottrade intended for Plaintiff and the other members of the Class to rely on its representations and assurances that the information furnished to Scottrade would be protected, secure, and not susceptible to access from unauthorized third parties when Scottrade knew otherwise.

92.     Scottrade mishandled Plaintiff's and the other Class members' personal information in such manner that it was compromised.

93.     Scottrade failed to follow industry best practices concerning data theft or were negligent in preventing such data theft from occurring.

94.     Scottrade accordingly engaged in an unlawful unfair and deceptive practice under Mo. Stat. Ann. § 407.020.

95.     It was foreseeable that Scottrade's willful indifference or negligent course of conduct in handling their customers' personal information would put that information at risk of compromise by data thieves.

96.     Scottrade benefited from mishandling customers' personal information because, by not taking preventative measures that would have prevented the data from being compromised, Scottrade saved on the cost of those security measures.

97.     Scottrade's fraudulent and deceptive acts and omissions were intended to induce Plaintiff's and the other Class members' reliance on Scottrade's deception that their personal and financial information was secure and protected.

98.     Scottrade violated Mo. Ann. Stat. § 407.020 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff's and the other Class

members' private personal and financial information, by misrepresenting the security of Plaintiff's and Class members personal information, by failing to warn them that their information was at risk before and/or after Plaintiff and Class members opened accounts with Scottrade, and by failing to discover and immediately notify affected customers of the nature and extent of the Security Breach.

99.     Scottrade's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

100.     Scottrade's conduct constitutes unfair acts or practices as defined in that statute because Scottrade caused substantial injury to Plaintiff and Class members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

101.     Plaintiff and the other members have suffered injury in fact and actual damages including lost money and property as a result of Scottrade's violations.

102.     Plaintiff's and the other Class members' injuries were proximately caused by Scottrade's fraudulent and deceptive behavior, which was conducted with wanton, willful, and/or outrageous acts and/or reckless disregard for the rights of others, such that an award of punitive damages is appropriate under Mo. Stat. Ann. § 407.025.1.

103.     By this conduct, Scottrade violated the substantive consumer protection and unfair deceptive trade practices acts or statutes of the Consumer Fraud States, whose laws do not materially differ from that of Missouri, or conflict with each other for purposes of this action.

## COUNT V
### Bailment
### (On Behalf of Plaintiff and the National Class)

104.     Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

- 21 -

105.    Plaintiff and the Class members delivered and entrusted their private information to Scottrade for the sole purpose of receiving services from Scottrade.

106.    Scottrade accepted the bailment of that private information.

107.    During the time of bailment, Scottrade owed Plaintiff and Class members a duty to safeguard this information properly and maintain reasonable security procedures and practices to protect such information.

108.    Scottrade breached that duty.

109.    As a result of that breach of duty, Plaintiff and Class members have suffered harm.

## VII.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this complaint so triable.

## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in his favor and against Scottrade as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Class;

B.    Ordering Scottrade to pay monetary damages to Plaintiff and the other members of the Class;

C.    Ordering Scottrade to pay for not less than three years of credit and identity monitoring services for Plaintiff and the other members of the Class;

D.    Ordering Scottrade to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

E.    Ordering Scottrade to pay statutory damages, as provided by the Missouri Merchandising Practices Act and other applicable State Consumer Fraud Acts, to Plaintiff and the other members of the Class;

    F.     Ordering Scottrade to disseminate robust individualized notice of the Security Breach to all Class members and to post notice of the Security Breach on its website(s);

    G.     Ordering Scottrade to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

    H.     Ordering Scottrade to pay both pre- and post-judgment interest on any amounts awarded; and

    I.     Ordering such other and further relief as may be just and proper.


Dated: October 6, 2015               Respectfully submitted,
ANDREW DUQUM, individually and
on behalf of all others similarly situated


     */s/ Anthony G. Simon*

Joseph J. Siprut*
*jsiprut@siprut.com*
John S. Marrese*
*jmarrese@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

Anthony G. Simon
*asimon@simonlawpc.com*
John G. Simon
*jsimon@simonlawpc.com*
**THE SIMON LAW FIRM, P.C.**
800 Market Street
Suite 1700
St. Louis, Missouri 63101
Phone: 314.241.2929
Fax: 314.241.2029

*\*Pro Hac Vice* application to be submitted

- 23 -